UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| David Coyne, on behalf of himself and all others similarly situated, | Case No. 17-cv-500 (PAM/SER) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| Midland Funding, LLC, Midland Credit Management, and Messerli & Kramer, P.A., | |
| Defendants. | |

This matter is before the Court on Defendants' Motion to Dismiss. For the following reasons, the Motion is granted.

**BACKGROUND**

Plaintiff David Coyne is an attorney licensed in Minnesota. At some unspecified point in the past, Coyne defaulted on a Citibank credit-card debt. Defendant Midland Funding bought the debt and hired Defendant Messerli & Kramer to collect it. Midland likely purchased Coyne's debt for pennies on the dollar because it was an old debt. (Pl.'s Opp'n Mem. (Docket No. 16) at 2-3.) Midland hoped to convince Coyne to pay something on the debt, although Coyne was no longer legally obligated to do so.

Messerli sent Coyne a letter about the debt on February 26, 2016. (Am. Compl. (Docket No. 4) ¶¶ 35-42.) This letter does not ask Coyne to take any action, but rather purports to "provide some additional information pertaining to [Coyne's] account." (Id. Ex. A.) The letter lists the charge-off balance of the debt as $13,205.30, and the "current

balance" as $17,230.29. (Id.) The letter explains that the account balance "consists of the principal balance of $13,205.30 and interest of $3,871.39 at the rate of 6.00% plus incurred costs of $153.60." (Id.)

According to Coyne, this letter violated the Fair Debt Collection Practices Act ("FDCPA") in several ways.[1] First, the letter "did not disclose what the additional 'incurred costs' related to." (Id. ¶ 48.) Coyne contends that this failure to explain the incurred costs and to collect them was both an unfair or unconscionable means to collect a debt under § 1692f and a false representation concerning the character, amount, or legal status of a debt under § 1692e(2)(A). Coyne also contends that he did not owe Messerli costs of $153.60, and thus the letter violated several subsections of § 1692e and § 1692f. (Am. Compl. ¶¶ 55-60.) Second, the charge-off balance in the letter allegedly included principal, fees, and contractual interest and, according to Coyne, this violated the FDCPA in multiple ways. (Id. ¶¶ 69-71.) Finally, the letter violated the FDCPA because Messerli "did not disclose the time period from which the interest at 6.00% accrued" (id. ¶ 74), and the interest amount listed constituted compounded statutory interest in violation of Minnesota law. (Id. ¶ 80.)

Coyne then received a letter from Defendant Midland Credit Management, dated September 28, 2016. (Id. ¶ 102.) (The Amended Complaint does not specify what the relationship is between Midland Funding and Midland Credit Management.) This letter listed the "Charge-Off Balance" as $13,205.30, an interest rate of 6.00%, the "MCM

---

[1] Coyne initially asserted that the letter misstated the name of the creditor and that this misstatement violated the FDCPA. At the hearing, Coyne abandoned this claim.

Interest Balance" as $214.82, and the "Current Balance" as $13,420.13. (Id. Ex. B at 2.) The letter offered Coyne "Available Payment Options" including paying 30% of the debt to settle the account in full. (Id. at 1.) The letter also told Coyne that, "[b]ecause of the age of your debt, we will not sue you for it. If you do not pay the debt, we may continue to report it to the credit reporting agencies as unpaid." (Id.) Coyne contends that this letter misrepresented the principal balance because the amount listed included principal, fees, and interest. (Am. Compl. ¶ 111.) Coyne also contends that the amount listed as "MCM interest" violated the FDCPA in multiple ways. (Id. ¶¶ 126-46.)

On November 10, 2016, Midland Credit Management sent Coyne another letter, substantially the same as the September letter, again offering to settle the debt by paying 30% of the "current balance of $13,420.13," or $4,026.03. (Id. Ex. C.) Coyne contends that this letter also violated §§ 1692e and 1692f in similar ways to the other letters. (Am Compl. ¶¶ 156-57, 161-62, 171-76, 184-88.) Coyne does not allege that he took any action in response to these letters, or that he was ever contacted by any of the Defendants after these letters.

Coyne seeks to represent two subclasses of individuals with "addresses within the state of Minnesota" who received a communication similar to those he received from Messerli and the Midland entities. (Id. ¶ 199.)

The Amended Complaint raises a single claim for violation of the FDCPA against all three Defendants. He alleges that the statutory violations invaded his privacy, caused him emotional distress and embarrassment, and that Defendants intimidated and harassed

3

him. (Id. ¶¶ 195-97.) Coyne seeks both actual damages and statutory damages under § 1692k, and attorney's fees and costs.

## DISCUSSION

### A.  Standard of Review

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the non-moving party. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). However, the Court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that the plaintiff draws from the facts pled. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under Twombly. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556.

**B.     The FDCPA**

The FDCPA prohibits debt collectors from using a "false, deceptive or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, or "unfair or unconscionable means to collect or attempt to collect any debt." Id. § 1692f. Courts evaluate the statements at issue using the "unsophisticated consumer" standard. Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1055 (8th Cir. 2002). Defendants first argue that the Court should not use the "unsophisticated consumer" standard in this case, but rather should use the "competent lawyer" standard because Coyne is an attorney. See Powers v. Credit Mgmt. Servs., Inc., 776 F.3d 567, 573-74 (8th Cir. 2015) (Courts should not use unsophisticated-consumer standard in communications sent to a consumer's attorney.) But as Coyne points out, all of the cases discussing the "competent lawyer" standard are cases where the attorney was an intermediary between the consumer and the debt collector, not where the consumer is himself an attorney. E.g., Ferkingstad v. Accounts Receivable Servs., LLC, No. 16-3565, 2017 WL 1373261, at *3 (D. Minn. Apr. 13, 2017) (Ericksen, J.) ("When an attorney is interposed as an intermediary between the debt collector and consumer, courts apply [the] 'competent lawyer' [standard].").

There is no authority for Defendants' position that communications to a consumer who is also an attorney are judged by a different standard than communications sent to a consumer who is not an attorney. The FDCPA prohibits misleading communications even if the consumer was not actually misled. At this early stage of the litigation, the Court will not judge those communications by a more exacting standard. In addition,

5

because the Court concludes below that nearly all of the alleged misrepresentations were not material as a matter of law, whether the Court applies the unsophisticated consumer standard or the competent lawyer standard is of no moment. The statements in the letters are, in the main, not actionable as a matter of law, no matter to whom they were made.

**C.     Standing**

Defendants assert that the Supreme Court's 2016 decision in <u>Spokeo v. Robins</u>, 136 S. Ct. 1540 (2016), means that Coyne does not have standing to bring his claims. In <u>Spokeo</u>, the Supreme Court discussed the injury requirement for bringing a claim for a violation of the Fair Credit Reporting Act, which is similar in scope and purpose to the FDCPA. The Court emphasized that a "bare procedural violation" would not suffice to establish the requisite injury for standing purposes. <u>Id.</u> at 1549. But the Supreme Court did not hold that intangible injuries are insufficient as a matter of law. Rather, to determine whether intangible injuries, such as those Coyne alleges here, are sufficiently concrete to satisfy the injury-in-fact requirement, "both history and the judgment of Congress play important roles," because "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'" <u>Id.</u> (alteration in original) (quoting <u>Lujan v Defenders of Wildlife</u>, 504 U.S. 555, 578 (1992)).

In the FDCPA, Congress created a scheme to protect consumers from abusive debt collection practices. <u>Jackson v. Abendroth & Russell, P.C.</u>, 207 F. Supp. 3d 945, 959 (S.D. Iowa 2016). Most courts considering the subsections of the statute at issue here, §§ 1692e and 1692f, have found that these sections create the right on behalf of the

6

consumer to be free from false or misleading communications or representations about a debt, and the right to be free from unfair or unconscionable means to collect a debt. See, e.g., Hill v. Accounts Receivable Servs., LLC, No. 16-219, 2016 WL 6462119, at *4 (D. Minn. Oct. 31, 2016) (Frank, J.); see also Bernal v. NRA Grp., LLC, 318 F.R.D. 64, 72-73 (N.D. Ill. 2016) (finding that consumer alleging harm from debt collection letter claiming to assess collection costs that were not lawfully assessed had standing).  Indeed, the Eleventh Circuit has held post-Spokeo that a plaintiff who received a debt-collection letter that allegedly did not include FDCPA-required disclosures had Article III standing, even though "the injury may not have resulted in tangible economic or physical harm." Church v. Accretive Health, Inc., 654 F. App'x 990, 994 (11th Cir. 2016).

In the FDCPA, Congress created a statutory scheme and the rights that go with it. Coyne has sufficiently alleged injury here, both in the violation of the rights the FDCPA creates and in his allegations of emotional distress and other injuries.  He has standing to sue.

**D.     Materiality**

A plaintiff raising a violation of § 1692e or § 1692f must allege that the representation or communication was not only false but materially so. See Hill, 2016 WL 6462119, at *6 (citing cases).  "A misrepresentation is material if it 'undermined [the plaintiff's] ability to intelligently choose her action regarding the debt.'"  Id. (quoting Caulfield v. Am. Account & Advisors, Inc., No. 12cv2761, 2013 WL 1953314, at *2 (D. Minn. May 10, 2013) (Doty, J.)).  Coyne makes no allegations in this regard.  He does not contend that he did or refrained from doing anything in response to these letters.  And

7

regardless of Coyne's specific response, the question is whether any reasonable unsophisticated consumer would have been unable to choose her response to the letters because of the alleged misrepresentations therein. The majority of the alleged misrepresentations here are immaterial as a matter of law.

First, that the "principal" actually included interest and other fees incurred before Midland bought the debt is not actionable. Consumers who have credit cards know that those companies charge exorbitant interest, and given the age of the debt involved, any consumer would have assumed that whoever bought the old debt bought it inclusive of the interest and fees Citibank originally charged. Despite Coyne's insistence that he did not sign a contract with Citibank, getting and using a credit card constitutes sufficient assent to that card's terms and conditions, which always include interest and fees. And Midland was certainly entitled to attempt to collect the entire amount of the debt it bought from Citibank. This statement is not actionable.

Neither is the failure to disclose the time period on which the 6% interest accrued material. No consumer, no matter how unsophisticated, would be unable to decide how to respond to a debt-collection letter because that letter did not include the period of time during which statutory interest accrued.

The only possibly material misstatement is the listing of "incurred costs" of $153.60 in the letter Coyne received from Messerli. Coyne contends that these costs include amounts that Midland was not legally allowed to collect. Defendants respond that, even if they were not allowed to collect these costs, the amount is so small as to be immaterial. But Defendants' argument is not appropriate at this stage of the litigation.

8

Multiple courts have held that a representation that costs are due when the debt collector has no legal right to collect those costs violates the statute and is material. See Gorman v. Messerli & Kramer, P.A., No. 15cv1890, 2016 WL 755618, at *5 (D. Minn. Feb. 25, 2016) (Tunheim, C.J.) (finding that "a debt collector's false statements . . . asserting that a debtor owes an amount the debt collector is unauthorized to collect should almost always be considered material"); but see Grunwald v. Midland Funding LLC, 172 F. Supp. 3d 1050, 1054-55 (D. Minn. 2016) (Kyle, J.) (statement that debtor owed $30 that debt collector was not yet authorized to collect was not material).

Defendants insist that they are entitled to collect the costs listed as "incurred costs" in the Messerli letter. But Coyne plausibly alleges that they were not so entitled, and given the letter's failure—and Defendants' failure here—to specify what those costs entailed, the Court must assume that Defendants were not legally allowed to collect those costs. Thus, the statement that costs were owed is, at least for purposes of a motion to dismiss, a plausible violation of the FDCPA.

However, Coyne has not plausibly alleged that this statement somehow "undermined [his] ability to intelligently choose [his] action regarding [his] debt."[2] Caulfield, 2013 WL 1953314, at *2. In other words, he has not pled materiality with respect to the only potentially actionable statement in the letters he received. The Court

---

[2] And indeed, in light of the entire text of the Messerli letter, which does not demand any payment from Coyne, as well as the small amount of money involved, it is doubtful that Coyne will ultimately be able to prove materiality, even if he plausibly pleads such. See Grunwald, 172 F. Supp. 3d at 1054-55 (misrepresentation as to costs not material in light of the full text of letter and small amount of costs compared to the total debt).

will therefore dismiss this aspect of his claim without prejudice, and the rest of his claims with prejudice.

**CONCLUSION**

Coyne has failed to plausibly plead claims on which relief can be granted as to the majority of his claims. Those claims are dismissed with prejudice. The statement regarding costs, however, is potentially material but Coyne has not pled that it is. His claims arising out of this statement are dismissed without prejudice.

Accordingly, **IT IS HEREBY ORDERED that**:

1. The Motion to Dismiss (Docket No. 9) is **GRANTED**; and

2. The Complaint is **DISMISSED with prejudice** as to claims arising out of alleged misstatements regarding interest, and **DISMISSED without prejudice** as to claims arising out of the alleged misstatement regarding costs.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 20, 2017

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge